UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MICHAEL GOULETTE,                    Case No. 12-11353

               Plaintiff,              Terrence G. Berg
v.                                        United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Michael Hluchaniuk
                                          United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 9)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On March 26, 2012, plaintiff John Michael Goulette filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Robert H. Cleland referred this matter to the undersigned

for the purpose of reviewing the Commissioner's decision denying plaintiff's claim

for a period of disability and disability insurance benefits.  (Dkt. 2).[1]  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 8, 9).

### B.   Administrative Proceedings

_____

[1] On April 1, 2013, this case was reassigned to District Judge Terrence G. Berg.  (Dkt. 10).

Plaintiff filed the instant claim for disability insurance benefits on September 29, 2008, alleging that he became disabled on October 25, 2007.  (Dkt. 6-2, Pg ID 140-41).  The claim was initially disapproved by the Commissioner on December 2, 2008.  (Dkt. 6-2, Pg ID 67).  Plaintiff requested a hearing and on June 15, 2010, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Michael R. McGuire, who considered the case de novo.  (Dkt. 6-2, Pg ID 55-65).  In a decision dated June 16, 2010, the ALJ found that plaintiff was not disabled.  (Dkt. 6-2, Pg ID 42-51).  Plaintiff requested a review of this decision on July 9, 2010.  (Dkt. 6-2, Pg ID 38-39).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on March 16, 2012, denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 25-27); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** for further proceedings.

2

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 46 years of age on the alleged disability onset date.  (Dkt. 6-2, Pg ID 49).  Plaintiff's relevant work history included work as a glazier.  (Dkt. 6-2, Pg ID 49).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 6-2, Pg ID 47).  At step two, the ALJ found that plaintiff's status post fracture of the left ankle and obesity were "severe" within the meaning of the second sequential step.  (*Id.*).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (*Id.*).  The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform limited sedentary work requiring only occasional lifting and carrying or pushing of ten pounds, standing/walking two hours in an eight hour workday and sitting six hours, and no climbing, crouching or crawling.  (Dkt. 6-2, Pg ID 48-49).  At step four, the ALJ found that plaintiff could not perform his previous work as a glazier, classified as semi-skilled and medium, but heavy as performed.  (Dkt. 6-2, Pg ID 49).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 6-2, Pg ID 50).

**B.      Plaintiff's Claims of Error**

Plaintiff argues that the ALJ's hypothetical question posed to the vocational expert ("VE") was inaccurate and failed to accurately portray plaintiff's impairments, and thus the VE's response to that flawed hypothetical does not constitute substantial evidence to support the ALJ's decision in this case.  Plaintiff contends that the ALJ erred in not including within the RFC and hypothetical that plaintiff needed to elevate his leg during the day, and also that the jobs identified by the VE in response to the ALJ's hypothetical were inconsistent with the listings in the Dictionary of Occupational Titles ("DOT").

In October 2007, plaintiff fell three or four feet from a ladder and landed on his left ankle.  (Dkt. 6-7, Pg ID 212).  He received hospital treatment due to a left distal tibia/fibula plafond fracture (a type of ankle fracture).  (Dkt. 6-7, Pg ID 295). A doctor applied an external fixation to plaintiff's left ankle and he was discharged three days after admission.  (*Id.*).

In November 2007, a treatment provider noted that plaintiff was not elevating his leg and that he was not ready for definitive internal fixation due to swelling.  (Dkt. 6-7, Pg ID 217).  Six days later, plaintiff was examined to assess when he could undergo surgery and it was noted that he still had swelling and he was instructed to elevate his leg.  Plaintiff was scheduled for surgery the next week.  (Dkt. 6-7, Pg ID 237-38).  Later that month, plaintiff underwent surgery to

convert the external fixation to a circular frame.  (Dkt. 6-7, Pg ID 252-53).

In December 2007, x-rays of plaintiff's left tibia and fibula showed a pilon fracture of the distal tibia with persistent widening of the tibiotalar joint space that appeared increased from a prior x-ray, and stable alignment of the distal fibular fracture.  (Dkt. 6-7, Pg ID 216).  Later that month, a doctor performed surgery to modify the frame and resolve an impaction of articular fragments.  (Dkt. 6-7, Pg ID 235-36, 268).  Plaintiff was discharged one day after admission.  (*Id.*).  A December 21, 2007 x-ray of plaintiff's left ankle showed stable alignment with the external fixation in place.  (Dkt. 6-7, Pg ID 276).

In January 2008, a treatment provider noted that plaintiff was doing well with no specific concerns and that x-rays showed no changes or displacement of the frame.  (Dkt. 6-7, Pg ID 206, 226).  Later that month, plaintiff's external fixator was removed and a short cast was placed on his leg.  (Dkt. 6-7, Pg ID 294). An x-ray showed near anatomic alignment of plaintiff's left ankle.  (Dkt. 6-7, Pg ID 205).

In February 2008, a treatment provider noted that plaintiff was doing well and recommended that plaintiff be placed in a walking cast and resume weight-bearing on his leg, as tolerated.  (Dkt. 6-7, Pg ID 193).  Left ankle x-rays performed that day showed that plaintiff's tibial plafond and distal fibular fractures were casted into stable positions, and there has been no significant interval callus

5

formation.  (Dkt. 6-7, Pg ID 221).

In March 2008, plaintiff presented to Dr. Soheil Najibi for an examination. (Dkt. 6-7, Pg ID 197).  Dr. Najibi noted that plaintiff had minimal ankle motion and that an x-ray showed that his fracture was healed and his mortise joint was aligned and that plaintiff had been walking at home without the assistance of his crutches.  (*Id.*).  Dr. Najibi put plaintiff into an Aircast boot, instructed plaintiff to walk more and noted that he should be off work for two months.  (*Id.*).  Later that month, plaintiff presented for rehabilitation services with complaints of moderate to severe difficulty using stairs, significant difficulty walking more than 15 minutes, and moderate difficulty with prolonged sitting due to left leg swelling. (Dkt. 6-7, Pg ID 190-91).  A staff member developed a rehabilitation treatment plan.  (*Id.*).

In April 2008, plaintiff attended a rehabilitation appointment and reported consistent improvements, with decreased swelling with sitting, decreased pain in standing and walking and improved ability to walk further distances.  (Dkt. 6-7, Pg ID 248-49).  Plaintiff continued to complain of significant limitations in his ability to walk without pain; he stated that he could not shop without using an electric cart.  (*Id.*).  A staff member noted that plaintiff was making consistent improvements in his range of motion and gait, maintained 5/5 strength in this ankle, but continued to have significant limitations in left foot, ankle, and knee

6

mobility.  (*Id.*).  The staff member also noted that plaintiff needed a cane for walking and had difficulty with stairs and prolonged walking.  (*Id.*).  Later that month, plaintiff reported to Dr. Najibi that he was doing well, did not usually have much pain, and noticed "quite a bit of progress" in the prior couple of months.  (Dkt. 6-7, Pg ID 189)  Plaintiff was weight-bearing as tolerated in a CAM walker boot, which Dr. Najibi stated that he could discontinue and put on a shoe as tolerated.  (*Id.*).

In May 2008, plaintiff attended a rehabilitation session and reported consistent improvements, noting that he has been able to stand and walk for greater periods of time and has decreased edema.  (Dkt. 6-7, Pg ID 284-85).  Plaintiff continued to complain of significant limitations in his mobility, stating that he has pain if he stands or walks for more than 15 minutes, and that he has difficulty walking on non-level surfaces.  (*Id.*).  A staff member noted that plaintiff could ambulate around his home without the cane and had made steady improvements in his strength, gait, function, and range of motion, but still had significantly limited ranges of motion and strength in his left foot and ankle.  (*Id.*).

In June 2008, Dr. Najibi examined plaintiff and noted that he was doing well with significant improvement in his pain, mild range of motion improvement, and increased strength.  (Dkt. 6-7, Pg ID 255).  On examination, Plaintiff had severely limited ranges of ankle motion and edema.  (*Id.*).  Dr. Najibi stated that an x-ray

showed a left pilon fracture, status-post external fixation with severe ankle mortise joint deformity and degenerative and arthritic changes of the ankle mortise joint. (*Id.*).  Dr. Najibi recommended continued physical therapy and weight-bearing, as tolerated.  (*Id.*). Three days later, a staff member with rehabilitation services noted that plaintiff had been making slow, but steady improvements, has progressed to ambulating without a cane and has minimal to no edema, but continued to have an antalgic gait and deficits in strength and range of motion.  (Dkt. 6-7, Pg ID 218-19).

Plaintiff was discharged from physical therapy in July 2008.  (Dkt. 6-7, Pg ID 223-24).  He continued to complain of difficulty with prolonged walking and using stairs and of pain across the anterior left ankle.  (*Id.*).  A staff member noted that plaintiff could walk without an assistive device, had an antalgic gait due to a lack of left lower extremity dorsiflexion, and had difficulty going down stairs in a step-over-step fashion.  (*Id.*).  Plaintiff had no significant edema and increased strength and ranges of motion.  (*Id.*).

In August 2008, plaintiff presented to Dr. David Katcherian for a follow-up regarding his work restrictions.  (Dkt. 6-7, Pg ID 293).  Dr. Katcherian noted that plaintiff went through intensive rehabilitation and had reached maximum improvement.  (*Id.*).  On examination, plaintiff had grossly intact sensation, some reduced range of motion, and was able to stand and walk with no difficulty.  (*Id.*).

8

Dr. Katcherian gave plaintiff a work note stating that for approximately one year, he could not climb, stand, or walk for long periods of time. (*Id.*).

In November 2008, Dr. Leonidas Rojas examined plaintiff for the State Disability Determination Service ("DDS"). (Dkt. 6-7, Pg ID 299-300). Plaintiff reported that he had mild to moderate pain, could not stand or walk for prolonged periods, and needed to elevate his left leg due to swelling. (*Id.*). He also reported that he had difficulty climbing stairs, could not run or jump, and had worsened pain after walking more than a block. (*Id.*). Plaintiff stated that he had difficulty balancing, but had not been using a cane. (*Id.*). He could care for his personal needs and drive. (*Id.*). On left ankle examination, Dr. Rojas noted that plaintiff had no gross swelling and had mild deformity, tenderness, and restriction on flexion/dorsiflexion. (*Id.*). Plaintiff had no difficulty standing up from a chair or getting on or off the examining table, walked with a minimal left-sided limp, could not walk on his heels or toes, and had some difficulty squatting. (*Id.*). Dr. Rojas opined that plaintiff could not perform jobs requiring activities such as prolonged standing or walking, climbing ladders or stairs, running, or squatting. (*Id.*).

Later that month, Dr. William Joh reviewed plaintiff's records for the State DDS, created an assessment of his physical limitations, and found plaintiff limited to sedentary work. (Dkt. 6-7, Pg ID 301-09). Dr. Joh opined that plaintiff could occasionally lift and carry ten pounds, stand and/or walk for two hours per

workday, and sit for six hours per workday.  (*Id.*).  He also opined that Plaintiff

could frequently balance and crouch and occasionally stoop, kneel, crawl, and

climb ramps, stairs, ladders, ropes, and scaffolds.  (*Id.*).

According to plaintiff, the ALJ rejected plaintiff's testimony that he needs to

elevate his left ankle, and thus incorrectly failed to include this limitation in his

RFC.  Plaintiff argues that the VE testified at the hearing that an individual's need

to elevate his leg above waist level more than 15 percent of the work day would

preclude competitive employment.  Plaintiff further contends that the DDS

examining physician's report states that plaintiff still has pain and has to elevate

his leg periodically due to pain and swelling, and thus the ALJ erred in not

including this limitation in plaintiff's RFC and the hypothetical question posed to

the VE.

Plaintiff also argues that the ALJ erred in relying on the VE's testimony that

there were a significant number of jobs that could be performed with plaintiff's

limitations because there were conflicts between the DOT and the jobs identified

by the VE.  In response to the ALJ's hypothetical question, the VE identified three

types of jobs the hypothetical claimant could perform: order clerk, machine feeder,

and telephone clerk.   (Dkt. 6-2, Pg ID 63).  According to plaintiff, the DOT shows

"office clerk" as a sedentary job with a specific vocational preparation ("SVP")[2] level of 4, which requires vocational preparation time of over three months up to and including six months.  Plaintiff states that unskilled work is limited to an SVP of 1 or 2, and thus the "office clerk" position is not consistent with the RFC stated by the ALJ.  Similarly, the "telephone clerk" position (DOT No. 239.362-010) identified by the VE is sedentary with an SVP of 3, and is inconsistent with the RFC.  Finally, the DOT shows the "machine feeder" position (DOT No. 699.686-010) as medium in strength, with an SVP of 2.  The medium requirement of this position is inconsistent with the ALJ's RFC for limited sedentary work.  Therefore, because none of the jobs identified by the VE are sedentary with an SVP of 1 to 2, the VE's testimony does not provide substantial evidence supporting the ALJ's finding that plaintiff was not disabled.  Therefore, plaintiff requests that this Court reverse the decision of the Commissioner and award plaintiff benefits, or, in the alternative, remand this matter back for further proceedings.

## C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ reasonably declined to include a limitation that plaintiff needed to elevate his leg during the day in the RFC finding.

---

[2] "The DOT lists a specific vocational preparation (SVP) time for each described occupation.  Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  SSR 00-4p, 2000 WL 1898704, at *3.  "Under [SSA] rulings and regulations, [plaintiff] must possess transferable skills from previous work in order to perform SVP-3 jobs."  *Steward v. Barnhart*, 44 Fed. Appx. 151, 152 (9th Cir. 2002).

The Commissioner contends that the ALJ reasonably found that although plaintiff broke his ankle badly, all of the treatment notes indicated that plaintiff's ankle had healed well and there was nothing in the record to substantiate plaintiff's claim that he needed to elevate his left ankle.  (Dkt. 6-2, Pg ID 49).  A March 2008 x-ray indicated that plaintiff's left ankle had healed, and five months later plaintiff was able to stand and walk without difficulty.  (Dkt. 6-2, Pg ID 48; Dkt. 6-7, Pg ID 197, 293).  Plaintiff was advised initially to elevate his leg following his injury in October 2007 to reduce swelling so that he could undergo surgery.  (Dkt. 6-7, Pg ID 238).  Plaintiff still had edema in June 2008, but it resolved by the following month.  (Dkt. 6-7, Pg ID 223-24, 255).  And, contrary to plaintiff's claim that the consultative examining physician, Dr. Rojas, found that plaintiff had to elevate his leg periodically to alleviate pain and swelling, the Commissioner argues that Dr. Rojas was simply recording plaintiff's own subjective complaints, and that Dr. Rojas found no swelling on examination and did not opine that plaintiff had to elevate his leg.  (Dkt. 6-7, Pg ID 299-300).  Further, Dr. Katcherian imposed work limitations on plaintiff in August 2008 and did not mention that plaintiff needed to elevate his leg.  (Dkt. 6-7, Pg ID 293).  Therefore, the Commissioner concludes, the ALJ reasonably found there is no support in the record for plaintiff's claimed need to elevate his leg during the workday.

The Commissioner also argues that plaintiff has failed to show that the ALJ

committed reversible error in finding that plaintiff could perform work existing in

significant numbers in the national economy.  The Commissioner concedes that the

ALJ failed to ask the VE whether her testimony conflicts with the DOT and obtain

a reasonable explanation for any conflicts, as required by Social Security Ruling

("SSR") 00-4p.  The Commissioner argues, however, that this is at most harmless

error because at least two of the jobs identified by the VE correspond to

occupations in the DOT that plaintiff could perform and "[t]he ALJ would have

reached the conclusion that Plaintiff was not disabled even if he had not relied on

inaccurate testimony from the VE."  (Dkt. 9, Pg ID 346).  According to the

Commissioner, the positions of telephone clerk and order clerk correspond to

entries in the DOT that are unskilled and require sedentary exertion.  Specifically,

the position plaintiff identifies as requiring sedentary exertion with an SVP of 3 is

"Telephone Clerk, Telegraph Office", with DOT No. 239.362-010.  However, the

DOT also contains a listing for "Telephone Quotation Clerk," DOT No. 237.367-

046, which is sedentary and has an SVP of 2.  Further, while the DOT does list a

position titled "Order Clerk" as having an SVP of 4 (DOT No. 249.362-026), as

plaintiff argues, the DOT also describes a position as "Order Clerk, Food and

Beverage," which has an SVP of 2 (DOT No. 209.576-014).  Thus, the

Commissioner concludes, although the ALJ did not follow the requirements of

SSR 00-4p by asking the VE whether her testimony conflicted with the DOT, this

was harmless error because at least two of the jobs identified by the VE

corresponded to positions in the DOT that conformed to the VE's testimony.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

14

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

16

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

**B.  Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

18

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

**C.     Analysis and Conclusion**

19

**1.    The ALJ's hypothetical question is supported by substantial evidence**

Plaintiff argues that the hypothetical question the ALJ posed to the VE was inaccurate because it did not include a limitation that plaintiff needed to elevate his ankle during the day.  The undersigned has thoroughly reviewed the record evidence, the parties' submissions, and the ALJ's decision, and finds that the ALJ reasonably declined to include plaintiff's claimed need to elevate his leg during the day.  In creating a hypothetical for a vocational expert, the ALJ is obligated to "translate the [plaintiff's deficiencies] into a set of specific limitations that are properly rooted in the administrative record."  *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp.2d 804, 807 (E.D. Mich. 2005); *see also Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (a hypothetical must "accurately [set] forth the plaintiff's physical and mental impairments.").  "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts.  In fashioning the hypothetical question to be posed to the vocational expert, the ALJ 'is required to incorporate only those limitations accepted as credible by the finder of fact.'"  *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *see also Gant v. Comm'r of Soc. Sec.*, 372 Fed. Appx. 582, 585 (6th Cir. 2010); *Stanley v. Sec'y of Health & Human Servs.*, 39

20

F.3d 115, 118-19 (6th Cir. 1994) (the ALJ is not obliged to incorporate

unsubstantiated complaints into his hypothetical).

The ALJ found that plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, but that "the claimant's

statements concerning the intensity, persistence and limiting effects of these

symptoms are not credible to the extent they are inconsistent with" the ALJ's RFC

finding.  (Dkt. 6-2, Pg ID 48).  The ALJ noted that plaintiff testified that he is in

constant pain and that he needs to elevate his left ankle above waist level most of

the day to alleviate pain.  (*Id.*).  The ALJ explained that the record indicates that

plaintiff broke his ankle badly, but that it has healed well and there is nothing in

the record to substantiate plaintiff's claim that he needs to elevate his left ankle.

(Dkt. 6-2, Pg ID 49).  The record indicates that plaintiff injured his left ankle in

October 2007, and between October 2007 and April 2008, plaintiff progressed

from requiring an external fixation to needing no ankle immobilization.  (Dkt. 6-7,

Pg ID 189, 193, 197, 235-36, 248-49, 252-53, 268, 294-95).  In May 2008,

plaintiff was able to stand and walk for greater periods of time and had decreased

edema, and in June 2008 plaintiff was noted to be doing well with significant

improvement in his pain, mild range of motion improvement and increased

strength, minimal to no edema, and he could ambulate without a cane.  (Dkt. 6-7,

Pg ID 281-19, 255, 284-85).  As of July 2008, plaintiff had no significant edema,

increased strength and ranges of motion, an antalgic gait, and could walk without an assistive device, and was discharged from physical therapy. (Dkt. 6-7, Pg ID 223-24). And, in August 2008, Dr. Katcherian found that plaintiff had grossly intact sensation, some reduced range of motion, and was able to stand and walk without difficulty. (Dkt. 6-7, Pg ID 293).

Moreover, no treating doctor has opined that plaintiff is unable to work because of his impairments or that he needs to elevate his leg during the workday. Although plaintiff was initially advised to elevate his leg, by the time of the hearing, there was no such restriction. Dr. Katcherian only opined in August 2008 that plaintiff could not climb, stand or walk for long periods of time. (Dkt. 6-7, Pg ID 293). And Dr. Rojas, the DDS consulting physician, noted that plaintiff reported that he had mild to moderate pain and that he could not stand or walk for prolonged periods of time and needed to elevate his leg due to swelling. (Dkt. 6-7, Pg ID 299-300). However, Dr. Rojas opined that plaintiff could not perform jobs requiring activities such as prolonged standing or walking, climbing ladders or stairs, running or squatting. (*Id.*). Neither physician mentioned that plaintiff needed to elevate his leg. Accordingly, the ALJ reasonably found that there was no support for plaintiff's alleged need to elevate his leg during the workday, and the ALJ's RFC finding is supported by substantial evidence.

### 2.   A conflict exists between the VE's testimony and the DOT

Generally speaking, the Sixth Circuit has made it clear that a VE's testimony identifying specific jobs available in the regional economy that an individual with the claimant's limitations could perform can constitute substantial evidence supporting a Step Five determination that the claimant could perform other work and therefore is not disabled.  *See Wilson*, 378 F.3d at 549.  Nonetheless, SSR 00-4p "sets forth the actions required of an ALJ when there is an apparent conflict between the testimony of the [VE] and the DOT."  *Lancaster v. Comm'r of Soc. Sec.*, 228 Fed. Appx. 563, 573 (6th Cir. 2007) (quoting *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374 (6th Cir. 2006)).  SSR 00-4p imposes an affirmative duty on the ALJ to ask the VE if the evidence that he or she has provided "conflicts with [the] information provided in the DOT."  *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009).

SSR 00-4p provides, in pertinent part:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between the VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  *At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency*.

> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict.  The

23

adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than the DOT information.

* * *

When a VE or VS provides evidence about the requirements of a job or occupation, *the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VE evidence and information provided in the DOT*.  In these situations, the adjudicator will:

- Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

- If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added).  SSR holdings "are binding on all components of the Social Security Administration.  These rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted."  20 C.F.R. § 402.35(b)(1).

In *Lancaster v. Commissioner of Social Security*, 228 Fed. Appx. 563 (6th Cir. 2007), the Sixth Circuit recognized that "[c]ourts are divided as to whether the failure to inquire into DOT inconsistencies entitled a Plaintiff to relief."  *Id.* at 574. The Court noted that in its case, the ALJ erroneously found that the VE's job findings were "consistent with the DOT" despite the fact that he failed to inquire

24

about such conflicts at the hearing.  *Id.*  The magistrate judge found that the failure to ask the VE about conflicts was harmless error "since there was no conflict for the ALJ to resolve between the [vocational expert's] testimony and the DOT," and the district court adopted the magistrate judge's findings.  *Id.*  The plaintiff argued on appeal that the ALJ's failure to examine the VE was not harmless.  According to the plaintiff, there were inconsistencies between the VE's testimony and the DOT because the ALJ specifically found that the plaintiff had no transferrable skills from any past relevant work (and thus was limited to unskilled work) and "all the jobs the vocational expert listed are eliminated by being semi-skilled or requiring significant public contact."  *Id.* at 574-75.[3]  The Sixth Circuit agreed and found that "[t]he ALJ failed to ensure that all jobs enumerated by the vocational expert were consistent with the DOT."  *Id.* at 575.  The Court then went on to hold, however, that "[w]hether or not inconsistencies exist is not dispositive in this case" because the VE's testimony was ultimately unreliable in that the positions identified by the VE were for "mild restrictions" and not "moderate" limitations as the ALJ ultimately found.  *Id.*  Thus, the *Lancaster* decision did not definitely answer the question of whether the failure to pose the "inconsistencies" question, in and of itself, mandates remand.

---

[3] "'[U]nder [SSA] rulings and regulations, [Plaintiff] must possess transferable skills from previous work in order to perform SVP-3 [semi-skilled] jobs,' such as a desk clerk position."  *Id.* (quoting *Steward*, 44 Fed. Appx. at 152).

Following *Lancaster*, the courts in this circuit have generally concluded that the ALJ's failure to inquire about consistency with the DOT is not reversible error unless a potential conflict actually exists, thereby undermining the reliability of the VE's testimony and the ALJ's ability to rely upon it.  *Compare, e.g.*, *Spivey v. Comm'r of Soc. Sec.*, 2013 WL 1183352, at *8 (E.D. Mich. Mar. 21, 2013) (ALJ did not base findings on substantial evidence when jobs identified by VE conflicted with DOT and ALJ failed to ask if these jobs conflicted with the information provided in the DOT, as required by SSR 00-4p); *Miller v. Comm'r of Soc. Sec.*, 2012 WL 398650, at *15 (N.D. Ohio Feb. 7, 2012) (VE's failure to disclose conflict with positions identified not harmless error when hypothetical individual "would be limited to occasional use of the hands for grasping or fine fingering work" and each of the jobs identified by the VE required either frequent fingering or frequent handling); *Ralston v. Astrue*, 2011 WL 7299836, at *4 (E.D. Mich. Aug. 30, 2011) (awarding plaintiff attorneys fees following remand because conflict existed), *adopted by* 2012 WL 479831 (E.D. Mich. Feb. 14, 2012); *with, e.g., Frederick v. Comm'r of Soc. Sec.*, 2011 WL 1518966, at *8 (E.D. Mich. Mar. 25, 2011) (ALJ's failure to make the required inquiry amounts to harmless error when plaintiff has failed to identify any inconsistency between the DOT and the hypothetical limitations), *adopted by* 2011 WL 1518913 (E.D. Mich. Apr. 20, 2011); *Wix v. Astrue*, 2010 WL 520565, at *7 & n.4 (M.D. Tenn. Feb. 9, 2010)

26

(collecting harmless error cases holding that ALJ's failure to inquire about consistency with the DOT is not reversible error unless a potential conflict actually exists); *Fleeks v. Comm'r of Soc. Sec.*, 2009 WL 2143768, at *7 (E.D. Mich. July 13, 2009) (ALJ's failure to make the required inquiry is harmless error when plaintiff has not alleged any inconsistency).

Plaintiff here argues that the ALJ erred in relying on the VE's testimony that there were a significant number of jobs that could be performed with plaintiff's limitations because there were conflicts between the DOT and the jobs identified by the VE.  The Commissioner concedes that the ALJ failed to ask the VE if his testimony was consistent with the DOT, but responds that plaintiff has identified, at most, harmless error because two of the jobs identified by the VE correspond to occupations in the DOT that plaintiff could perform.

Although the ALJ stated in his opinion that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles," (Dkt. 6-2, Pg ID 50), a reading of the administrative hearing transcript shows that the ALJ failed in his "affirmative duty" to question the VE as required by SSR 00-4p.  (Dkt. 6-2, Pg ID 62-63). Further, the VE also failed to provide the codes for the positions that she listed, which would have enabled plaintiff to consult the DOT to determine whether a conflict exists.  Instead, the VE merely provided job availability information for

"order clerk," "machine feeder, putting things into a machine," and "telephone clerk," and stated that "[t]hese are all sedentary, unskilled, SVP 2 jobs." (*Id.*). Plaintiff argues that the three jobs identified by the VE conflict with the DOT because they either require higher than an SVP of 2 (meaning they are not unskilled jobs), or they require more than sedentary work. Defendant argues that the DOT contains listing for other jobs with similar titles that have an SVP of 2 and are sedentary, and thus any error is harmless. Resolving this issue is problematic because neither the ALJ nor the VE provided DOT codes for any of the identified jobs.

This case is similar to *Teverbaugh v. Comm'r of Soc. Sec.*, 258 F. Supp.2d 702 (E.D. Mich. 2003), where the ALJ failed to question the VE regarding whether the jobs she identified as being consistent with the plaintiff's RFC conflicted with the DOT. *Id.* at 705. In addition, the VE failed to provide the codes for the positions that she listed. *Id.* The plaintiff argued that it is impossible to determine whether a conflict exists in any of the jobs identified with just the job title, because there may be multiple codes for each job listed. *Id.* The Court found that the ALJ "failed to ensure there was no conflict, and there is no apparent means of otherwise determining whether, in fact, the jobs identified are the ones that Plaintiff can perform (because the VE failed to provide the job codes)." *Id.* at 706. Thus, "[b]ecause the VE's testimony was the only step five evidence that the ALJ relied

28

upon, the Court cannot rule that there is substantial evidence to support the ALJ's findings."  *Id.*; *see also Ralston*, 2011 WL 7299836, at *4 (it was not harmless error for the ALJ to fail to inquire about conflicts between the VE's testimony and the DOT because no job codes were provided and the court could not decide whether "office clerk" equated to an "administrative clerk" (semi-skilled and outside the plaintiff's RFC) or a "mail clerk" (unskilled)).

In this case, there are apparent conflicts between the VE's testimony and the information provided by the DOT.  The three jobs identified by the VE conflict with the DOT because they appear to either require higher than an SVP of 2 or they require more than sedentary work.  This apparent conflict is not cured by the Commissioner's suggestion that "telephone clerk" could be "Telephone Quotation Clerk" (with an SVP of 2) instead of "Telephone Clerk, Telegraph Office" (SVP of 3) and "order clerk" could be "Order Clerk, Food and Beverage" (also with an SVP of 2) instead of "Order Clerk" (SVP of 3), and is exacerbated by the VE's failure to include job codes.[4]  *See Ralston*, 2011 WL 7299836, at *4 (the court could not decide whether "office clerk" equated to an "administrative clerk" (semi-skilled and outside the plaintiff's RFC) or a "mail clerk" (unskilled)).  This conflict was

_____

[4] The undersigned notes that the Commissioner does not address, and thus apparently concedes, that the VE's identification of "machine feeder" is inconsistent with the ALJ's hypothetical question because it is listed as medium in strength, which is inconsistent with the ALJ's RFC to limited sedentary work.

not disclosed by the VE in his testimony and was not addressed by the ALJ in his opinion.  Because the VE's testimony was the only Step Five evidence that the ALJ relied on, the undersigned cannot find that there is substantial evidence to support the ALJ's findings, and this matter should be remanded for additional vocational expert testimony.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: May 10, 2013                          s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on May 10, 2013, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Richard J. Doud, Vanessa Miree Mays, AUSA, and
the Commissioner of Social Security.

                                            s/Tammy Hallwood
                                            Case Manager
                                            (810) 341-7850
                                            tammy_hallwood@mied.uscourts.gov